IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

TM COMPUTER CONSULTING, INC., an    )
Oregon corporation,                 )
                                    )
            Plaintiff,              )    Civil No. 08-6267-HO
                                    )
                                    )
            v.                      )        ORDER
                                    )
APOTHACARE, LLC, a Washington       )
liability company, and MATTHEW REED,)
an individual,                      )
                                    )
            Defendants.             )
_____)

Plaintiff, TM Computer Consulting, creates software products for the pharmaceutical industry through its "Apothacare" line of products and provides support services with respect to the software. Plaintiff created software called Pharmacist's Companion for its Apothacare line.

Defendant Matthew Reed contends that plaintiff approached him with the idea of selling him the Apothacare portion of its business.

Reed started a new business; defendant Apothacare, LLC with the apparent belief that he would purchase the Apothacare portion of plaintiff's business. Instead, Apothacare, LLC became the exclusive value added retailer (VAR) for plaintiff. Plaintiff thus entered into a marketing licensing agreement allowing defendant Apothacare, LLC to use plaintiff's intellectual property (Pharmacist's Companion) to market the software and to provide customer support and code enhancements.

The parties initially agreed on a one year term and added a six month extension. The agreement expired on June 30, 2008. The agreement provided that upon expiration:

> ...notwithstanding termination of this Agreement VAR shall retain the right to continue to support Authorized End-User Copies **that have been completed, marketed, and installed** pursuant to the VAR license **prior to the effective date of termination**, subject to continued payment of applicable royalties to the Owner.

Agreement at ¶ 12.4 (emphasis added).

The parties dispute the meaning of this survival provision. Plaintiff asserts that defendants are marketing and supporting Pharmacist's Companion contrary to any rights they have under the contract. Plaintiff filed this action asserting unfair competition, trademark infringement, trade libel, and cybersquatting among other claims. The court previously granted plaintiff's request for a preliminary injunction:

> Plaintiff's requested injunctive relief goes well beyond what is necessary to preserve the status quo and its somewhat weak marks. At this stage of the proceedings, the

2 - ORDER

court is not willing to force defendant to give up the
apothacarellc.com domain.  Moreover, the court is not
willing to dictate from which customers defendant can not
accept payment, so long as it is made clear in defendants'
continuing service of authorized end-users that it may not
provide service beyond version 2.6.17 and Patch M only to
customer copies installed prior to June 30, 2008.  To that
end, defendant shall be required to post in a conspicuous
manner on the main page of its website at
www.apothacarellc.com that:

> Apothacare, LLC is no longer associated
> with TM Computer Consulting and its Apothacare
> line of software.  As of June 30, 2008,
> Apothacare, LLC is no longer authorized to
> supply or support end-users of Pharmacist's
> Companion who did not have a licensed copy of
> Pharmacist's Companion installed on any given
> computer as of that date.  Authorized users with
> copies of the software as of that date should
> still continue to utilize Apothacare, LLC, for
> support up to and including version 2.6.17 and
> Patch M of Pharmacist's Companion and in the
> event the authorized software becomes corrupted
> or otherwise unusable on any computer licensed
> to use the software, Apothacare, LLC will
> provide support in correcting or reinstalling
> the software.  All other users/potential users
> of Pharmacists's Companion are directed to TM
> Computer Consulting which operates at
> www.apothacare.com as Apothacare.

Defendants shall also refrain from operating a website
under the domain name www.apothacaresoftware.com.
Defendants shall remove the link providing unprotected
access to a license key for Pharmacist's Companion.  Other
than continuing to operate as Apothacare, LLC as limited
above, defendants shall refrain from using the Apothacare
mark in any manner and shall refrain from
soliciting/servicing clients for Pharmacists' Companion
beyond those identified above.  To the extent defendants
are contacted by any customers for Pharmacist's Companion
in a manner different than through the website
apothacarellc.com, they shall provide the notice required
above.  Defendants are also enjoined from disclosing any of
plaintiff's confidential and proprietary information and
trade secrets related to Pharmacist's Companion.

Order dated September 11, 2008 (#23) at pp. 21-22

A.   Motion for Contempt and to Extend the Scope of the Restraining Order (#30)

Plaintiff now seeks a judgment of contempt against defendants[1] for violating the preliminary injunction.  Plaintiff also moves to extend the scope of the preliminary injunction to prohibit defendants from any further contact with users of Pharmacist's Companion and customers of plaintiff.

> Civil contempt ... consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt "need not be willful," and there is no good faith exception to the requirement of obedience to a court order. Crystal Palace, 817 F.2d at 1365. But a person should not be held in contempt if his action "'appears to be based on a good faith and reasonable interpretation of the [court's order].'" Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982) (quoting Rinehart v. Brewer, 483 F.Supp. 165, 171 (S.D.Iowa 1980). "Substantial compliance" with the court order is a defense to civil contempt, and is not vitiated by "a few technical violations" where every reasonable effort has been made to comply.
> The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by "clear and convincing evidence," not merely a preponderance of the evidence. Vertex, 689 F.2d at 889....

In Re Duel Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993).

Thus, the court must determine whether (1) defendants violated the preliminary injunction order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the

---

[1] Defendant Apothacare, LLC is now known as RxTechnical.

order, (4) by clear and convincing evidence.  See, id.  Any award must be limited to the actual loss for injuries which result from the noncompliance.  Id. at 696.

###    1.    Violation

Plaintiff contends that defendants violated the preliminary injunction by posting a statement on its website, www.apothacarellc.com, that the court's order does not restrict its ability to bill for support services or collect payments and provide support services for Pharmacist's Companion.  Plaintiff contends the website also contained a statement that defendants are not limited from providing new copies, including but not limited to new purchases, reinstallation, user transfer, hardware transfer, or similar support services so long as the customer existed prior to June 30, 2008.[2]  Defendants' statements on the website did violate the preliminary injunction because defendants could not provide new purchases and certain user transfers and hardware transfers are prohibited.

Shortly after the court entered the injunction, defendants began using a new website at www.rxtechnical.com.  It appears that this website is no longer fully operational,[3] but at the time the motion

---

[2]After plaintiff filed its motion seeking contempt, defendants removed the wording at www.apothacarellc.com regarding its interpretation of the court's order.

[3]The site uses an invalid security certificate at this time.

was filed, the site did not include the statement required by the court order.  Defendants did apparently add the statement after the motion was filed.  The site also referred to the ongoing litigation and referred to Apothacare (other than Apothacare, LLC) and Pharmacist's Companion.  The website contained a release schedule for a competing product stating "2009 -1st Quarter - General Release for Existing Customers."  The site additionally stated that "RxTechnical is involved in a legal dispute with TM Computer Consulting of Oregon who is also doing business under the Apothacare name.  Therefore RxTechnical is choosing to discontinue use of the Apothacare name for daily operation."

The site violated the preliminary injunction by failing to make the required statement when contacted by customers for pharmacists' companion and by using the Apothacare mark beyond Apothacare, LLC.  Although encouraging customers  to only use version 2.6.17 and wait for the competing product may not violate the injunction, the lack of the court required statement is a violation.

The RxTechnical site also attacked "the provider of Pharmacist's Companion" stating the level of service and maintenance was insufficient.  This appears to be close to a violation as well by referring to the Apothacare mark.

Defendants also sent correspondence to at least two customers referring to the ongoing legal dispute and not providing the notice required by the preliminary injunction.  While this is a contact

initiated by defendant rather than by a customer, it is a violation of the order.  Moreover, one of the letters stated that defendants could provide new software to an existing customer, which would be a violation of the injunction.

Additionally, defendants included an image from plaintiff's software on its new website which is also a violation of the injunction in that it uses the mark beyond what is allowed.

2.   Substantial Compliance

Although defendants contend that meaningful conferral before the motion was filed would have resulted in some of the curative actions taken by them, there is no indication that such an offer was made when plaintiff contacted them about filing the motion.  The fact that action such as posting the required statement at the new website, removing statements about the case from its website at apothacarellc.com, and removing the image from Pharmacist's Companion at its new website does demonstrate that defendants knew the actions were prohibited by the injunction.

Defendant maintains that they have not solicited any new clients for Pharmacist's Companion, but they did assert they could provide new purchases.  Almost immediately after the court entered the injunction, defendants directed existing customers to a new website without the required court language.  Morever, there is evidence demonstrating that defendants have continued invoicing customers

whose license have expired and have solicited customers who do not have a current license.

Defendants contend that the new website was under construction and not operating, but the evidence provided shows that defendants directed clients to the website and posted an interpretation of the case contrary to the injunction. The site disparages plaintiff's product support and introduced a new company name and an upcoming competing product. The site also requested customers to stay with the version of Pharmacist's Companion that defendants could continue to support until their new software came out. Morever, there was at least one letter sent out directing a customer to the new website. The fact that the website is still under construction does not demonstrate substantial compliance with the injunction. However, the required language did appear once the motion was filed.[4]

### 3.  Good Faith and Reasonable Interpretation of the Order

The failure to include the required language at the new website directed at customers who initiate contact is a violation of the order and cannot be construed as a good faith reasonable interpretation of the order. Additionally, the statements indicating that defendants may provide new purchases cannot be a reasonable interpretation of the order. The statements regarding user and hardware transfers are perhaps reasonable and the letters sent to

---

[4]But, it was posted with a header stating, "posted with dissent per recommendation of counsel."

customers without the required language is not clearly a violation, but appears to be an attempt to circumvent the order. At a minimum, the failure to include the required language at the new website and the indication that defendants could provide new purchases are not good faith reasonable interpretations of the order.

4.  Clear and Convincing Evidence

Although defendants have made significant changes since the filing of the motion, plaintiff has provided clear and convincing evidence of violations of the injunction entered on September 11, 2008.

It should be noted that defendants ask the court to narrowly interpret the order to permit renewals arguing that they did not adequately respond to the motion for preliminary injunction to begin with. To the extent defendants seek to modify the preliminary injunction, they should file a separate motion.

5.  Extend the Scope of The Injunction

On October 28, 2008, plaintiff informed defendants that due to non-payment of royalties, the survival provisions of the marketing agreement would expire in 30 days. Thus, plaintiff contends that defendants can longer continue to provide support services to existing authorized customers.

Section 12.5 of the agreement states that

... Owner may terminate this Agreement and any rights that
otherwise would survive termination hereof for nonpayment
of royalties, upon 30 days' written notice.  In the event
of  such  termination  for  non-payment,  all  rights  and
licenses granted VAR hereunder shall terminate, and Owner
shall be entitled to recover for breach of contract, tort,
and copyright infringement, and shall have all available
remedies at law or in equity, including injunction, damages
... and the right to recover attorney fees and all costs of
suit.

Defendants do not dispute that they failed to pay royalties, but
argue that the failure is not a material breach, that plaintiff
breached first by failing to provide timely updates, that plaintiff
interfered with defendant's business expectancy, and that plaintiff
has unclean hands.

The standard for extending the scope of the injunction are the
same as initially granting the injunction.  In seeking a preliminary
injunction, plaintiff must show either (1) a likelihood of success on
the merits and the possibility of irreparable injury, or (2) the
existence of serious questions going to the merits and the balance of
hardships  tipping  in  their  favor.   The  critical  element  in
determining the test to be applied is the relative hardship to the
parties.  If the balance of harm tips decidedly toward the plaintiff,
then the plaintiff need not show as robust a likelihood of success on
the merits as when the balance tips less decidedly.  Gilder v. PGA
Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991).  For purposes of
injunctive relief, serious questions refers to questions which cannot
be resolved one way or the other at the hearing on the injunction and
as to which the court perceives a need to preserve the status quo

lest one side prevent resolution of the questions or execution of any judgment by altering the status quo.  Id.  Serious questions are substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.  Serious questions need not promise a certainty of success,  nor even present a probability of success, but must involve a fair chance of  success on the merits.  Id.

Even if the balance of hardships tips sharply in plaintiff's favor, however, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.  Stanley v. University of Southern California, 13 F.3d at 1313, 1319. (1994).  Moreover, the public interest must be considered where the relief sought by the applicant might affect the public.  See Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (where an injunction is requested which will adversely affect  a  public  interest  for  whose  impairment,  even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff).

The preliminary injunction was based on the right of survival contained in section 12.4 of the agreement.  As noted above, section 12.5 extinguishes that right upon failure to pay royalties.  Section 12.2 provides 15 days to cure.  However, defendants did not try to pay the royalties until November 14, 2008, which is beyond the 15

days. Moreover, it appears that any cure provision is inapplicable because Section 12.5 starts with "Notwithstanding the foregoing ..." The fact that defendants attempted to pay the royalties well after receiving notice of the failure does not cure the default.

Defendants argue plaintiff failed to provide updates since July 7, 2007. But defendants executed the extension of the agreement in July of 2008 and did not complain at that time of the lack of updates. After the agreement expired resulting in the preliminary injunction, plaintiff did provide a new version, but plaintiff was not required to provide this to defendants because defendants could only support version 2.6.17. Moreover, defendants made no attempt to notify plaintiff of any such breach even after receiving notice of the failure to pay royalties.

To the extent defendants claim the failure to pay royalties is not material the contract explicitly makes it material given that it results in termination of all rights. Additionally, defendants argument that plaintiff waited 13 days after the due date to provide notice does not demonstrate that the breach was not material or that it somehow created a cure provision.

The alleged interference does not give defendants a right to continued survival of the right to support end-users. Even if interference did, defendants argument that plaintiff's letter to clients indicating that it is the sole source for updates, does not violate the agreement to allow defendants to provide support to the

limited subset of customers provided by section 12.4. Defendants additional argument that version 3 is merely an attempt to circumvent the right to support existing customers is not well-taken either.

Plaintiff has sent a free CD with version 3 to all customers which uninstalls previous versions. While this is somewhat of a dirty tactic, it does not permit the breach by defendants. In short, regardless of the merits of the interference claim, it does not serve to negate defendant's breach and revive the survivorship portion of the agreement.

Defendants argue that plaintiff has unclean hands because it appears to have tried to direct traffic away from RxTechnical.com by, for instance, hiding the term RxTechnical in the background. A check of plaintiff's website reveals no hidden term at this time, but a search engine result on Google shows plaintiff's website third in the results in the search for RxTechnical-but still behind defendant's website. This tactic does not to serve to justify failure to enjoin further support of previous clients.

As for irreparable harm, the parties continued fight for customers and market share, before defendant has a competing product on the market, demonstrates irreparable harm as both parties desire to steal and/or retain clients. Permitting one party to do so under the auspices of supporting the other's competing product creates irreparable harm that cannot be easily measured. Defendants'

assertion of irreparable harm because they cannot provide renewals misses the point that they are not permitted to do so.  This is not to say that defendants are prohibited from contacting previous clients to market its new product.  But, failure to enter the injunction will result in ill-will toward the plaintiff.[5]

Defendants also re-raise the issue of the weakness of plaintiff's mark, which the court already considered when initially entering the injunction.

Plaintiff has demonstrated a strong likelihood of success on the merits of the breach of contract regarding royalty payments and has demonstrated irreparable harm and a balance of hardships in its favor.  In addition, the public interest favors the injunction given the confusion customers for the type of product at issue are already suffering.  However, there is no basis for prohibiting defendants from marketing their new software to previous clients when it becomes available, so long as they don't use plaintiff's marks in doing so.  Accordingly, the court grants the motion to the extent that:

1.  The court finds defendants in contempt.

2.  The preliminary injunction is extended to prohibit defendants' further support of Pharmacist's Companion to any clients whether previously served or not.

---

[5]Such harm is demonstrated by the instance in which a customer who upgraded to version 3 of Pharmacist's Companion contacted defendants for support and defendants removed version 3 and reinstalled the old software to keep the client as its own.

14 - ORDER

B.   Motion to Compel (#48)

Plaintiff also moves to compel responses to its first set of interrogatories and first set of requests for production and things. Defendants indicate that they are in the process of responding, and the motion is granted to the extent that defendants shall provide the requested responses in a timely fashion.


CONCLUSION

For the reasons stated above, plaintiff's motion for contempt and to extend the scope of the preliminary injunction (#30) is granted as noted above.  Plaintiff's motion to compel (#48)is also granted.

DATED this   23rd   day of April, 2009.


     s/ Michael R. Hogan
United States District Judge